UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCENZO GAVRITY,<br><br>*Plaintiff,*<br><br>- against -<br><br>THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER JOSE TABORA, individually and in his official capacity as a New York City Police Officer, and JOHN DOE POLICE OFFICERS 1-25, whose identities and number are unknown, individually and in their official capacities as New York City Police Officers,<br><br>*Defendants.* | CV 12-6004<br><br>MATSUMOTO, J.<br>12 Civ. _____<br>SCANLON, M.J.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Vincenzo Gavrity ("Vincenzo" or "Plaintiff"), by and through his undersigned counsel, Schlam Stone & Dolan LLP, for his Complaint against defendants, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action arising out of the shocking beating of a teenager by New York City Police Officers during a disturbance – created by the Police themselves – outside the Staten Island Mall, where hundreds of customers were awaiting the commercial release of the new Air Jordan sneakers. The Defendants are the City of New York (the "City"), the New York City Police Department ("NYPD"), Police Officer Jose Tabora ("P.O. Tabora"), and John Doe Police Officers 1-25, whose identities and number are currently unknown ("John Doe Police Officers" and, collectively with P.O. Tabora, the "Police Officers" or the "Officers"). Acting under color of state law and pursuant to their authority, the Police Officers violated Plaintiff's rights under the United States Constitution and New York law when, on the night of December 22, 2011, they

1

descended on and brutalized him without cause while he stood near the front of a long line that had formed outside the Mall in anticipation of the sneaker release.

2. As set forth below, without any justification or provocation, a large group of police officers attacked Vincenzo from behind, threw him to the ground, and beat him ferociously—a beating that included stomping on him and kicking him in the testicles. When he begged them to stop and cried out for mercy, their answer was to continue the vicious attack.

3. Vincenzo was then handcuffed and thrown into a police car and arrested—again, all without justification. Despite that he was bleeding from the nose and mouth and had trouble breathing as a result of the blows to his neck and throat, Vincenzo was not taken to the hospital until later, and even then, the Police kept him in shackles to prevent the doctors from properly examining him; commanded the doctors not to perform certain diagnostic procedures; and lied about what caused his injuries.

4. There was no basis for Vincenzo's arrest. But even leaving that aside, certainly there can be no excuse for the continuous beating of a greatly outnumbered teenage prisoner who was lying on the ground and offering no resistance.

5. For the stark violation of his constitutional rights and the physical and emotional harm he suffered, Vincenzo deserves at a bare minimum, compensatory damages, punitive damages, and attorneys' fees, as well as such other relief as the Court deems proper.

## THE PARTIES

6. Plaintiff Vincenzo Gavrity is a citizen of the United States and resident of Richmond County in the City and State of New York. At the time of the attack he had just turned 19. He was then, and is now, a full-time college student.

7. Defendant City is a municipal corporation organized under the laws of the State of New York.

8. Defendant NYPD is a department, agency and/or branch of Defendant City and is responsible for the operation, management, and control of the New York City police force and all of its officers, agents, and employees.

9. Defendant P.O. Tabora was at all relevant times an officer, employee, and/or agent of the NYPD. P.O. Tabora was acting under color of state law and within the scope of his employment as a New York City law enforcement officer at all times relevant to this action. P.O. Tabora is being sued in his individual and official capacities.

10. Defendants John Doe Police Officers were at all relevant times officers, employees, and/or agents of the NYPD who were present during and/or personally participated in the events described in this Complaint. Upon obtaining the names of the John Doe Police Officers via discovery or otherwise, Plaintiff will amend this Complaint to identify them by name to the extent possible.

11. The John Doe Police Officers were acting under color of state law, and within the scope of their employment as New York City law enforcement officers, at all times relevant to this action. The John Doe Police Officers are being sued in their individual and official capacities.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a). Specifically, the Court has jurisdiction over Vincenzo's federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over his state law claims under 28 U.S.C. §§ 1367(a).

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to Vincenzo's claims occurred in Staten Island, New York, a borough of the City of New York that lies within the Eastern District of New York.

## NOTICE OF CLAIM

14. Vincenzo served a Notice of Claim on the Comptroller of the City of New York, by serving such Notice of Claim on the New York City Law Department, on or about March 16, 2012, within 90 days of the events giving rise to this Complaint. A Rule 50-h examination was conducted by Defendants on or about June 7, 2012.

15. More than 30 days have elapsed since service of the Notice of Claim and adjustment or payment thereof has been neglected or refused by the Defendants.

## TRIAL BY JURY

16. Vincenzo demands a trial by jury of all the claims asserted in this Complaint.

## STATEMENT OF FACTS

**The Calculated Hype Surrounding The Release Of
The New Air Jordan Sneakers In December 2011**

17. Nike's new model of Air Jordan sneakers was scheduled to go on sale at several stores in the Staten Island Mall at 12:00 a.m., *i.e.*, midnight, on December 23, 2011. This kind of tightly controlled release of new sneaker models has been used by Nike in the past, and had a track record of generating large crowds – often dominated by the young males that are the shoes' most likely consumers – clamoring for the year's new model. Fans have become accustomed to waiting in long lines for hours to ensure that they can buy a pair, or more than one.[1]

---

[1] Bianca Prieto and Arelis Hernandez, *For "Sneakerheads," Crazy Shoe Releases Are Nothing New*, Orlando Sentinel, February 24, 2011.

4

18. The most devoted fans are known as "sneakerheads," and are known to collect dozens or hundreds of pairs that they may keep or turn around and flip on eBay.[2] The shoes can fetch high prices on eBay and are prized by collectors.

19. Malls and retailers have had to increase security to deal with the crowds.[3] In some cases the release dates have had to be moved to the weekends so that kids would not skip school to stand on line.[4]

**Vincenzo And Other Sneaker Fans Line Up
At The Staten Island Mall For The Air Jordan Release**

20. On the morning of December 22, 2011, Vincenzo went to the Staten Island Mall to buy the new edition of Nike Air Jordan sneakers. It was expected that there would be long-lines, with teenagers (largely male) clamoring for the sneakers, as in the past.

21. Even though Vincenzo arrived at the Mall early in the morning, a line had already formed of people waiting to buy the sneakers. Because he had arrived so early, he was able to secure a place near the front of the line. The crowd on the line behind him swelled as the day progressed. With little to do but wait for the day to pass, strangers struck up conversations, and did each other favors like holding someone else's place in line if he wanted to step away to go to the bathroom or buy food. At lunchtime they ordered pizzas together.

22. By evening, the crowd on line behind Vincenzo had grown very large and those at the back were at times disorderly and rowdy. Throughout the evening, Vincenzo felt pushing and shoving from the crowd behind him.

---

[2] *Id.*
[3] *Id.*
[4] *Air Jordan Shoppers Mob Stores, Some Pepper-Sprayed*, December 23, 2011, available at http://www.msnbc.msn.com/id/45777268/ns/us_news-life/t/air-jordan-shoppers-mob-stores-some-pepper-sprayed/.

23.     While standing on line, Vincenzo befriended a 14-year old boy who was on line nearby. The boy was there with his mother, but she occasionally left the line. When the mother left the line to go shopping or to the bathroom, Vincenzo watched over the boy. At times, when people from the back of the line were pushing the front of the line, Vincenzo would make sure that the surging crowd did not trample the boy. He held on to the boy when necessary to protect him. Vincenzo told the boy's mother that he would look after her child.

**The Police Arbitrarily Select, Descend Upon, And
Brutalize Vincenzo, And Take His Possessions**

24.     Around 10:00 to 10:30 p.m. on December 22, 2011, Vincenzo was pushed from behind, which caused him to bump into the people in front of him. Shortly thereafter, he was grabbed from behind for no reason by a John Doe Police Officer and pulled from the line. Another John Doe Officer then punched him in the face. Vincenzo ended up on the ground. Two more officers then picked him up and threw him into a crowd of still more police. Another officer punched him in the face (again). Stunned that he had been grabbed from behind and punched by the police, Vincenzo cried out to the crowd.

25.     An officer slammed him into the ground. While he was on the ground, a gang of other John Doe Police Officers then began punching, kicking, kneeing, and elbowing him, over and over, in the face, ribs, testicles, and elsewhere on his body. The Officers' punching and beatings of Vincenzo came on suddenly, without any provocation or action by him.

26.     The John Doe Police Officers crowded around him and engaged in the continuous punching, kicking, kneeing, and elbowing of Vincenzo while he was on the ground, defenseless and writhing in pain. Vincenzo offered no resistance to the Officers' mistreatment, nor could he, as he was no match for the many officers who descended upon him.

27. Vincenzo was crying as he was being beaten by the police. He begged them for mercy, and to stop beating him, and cried out to the crowd for help. The Officers did not heed Vincenzo's cries and continued to beat him. Meanwhile, people in the crowd around Vincenzo tried to tell the police that he had done nothing wrong, and begged them to stop beating him.

28. When they finally stopped beating and abusing Vincenzo, the John Doe Police Officers arrested him and put him in handcuffs. At no point had Vincenzo offered any resistance to the Officers, or given them any reason to arrest him.

29. The handcuffs were so tight that they caused Vincenzo severe pain and injury to his wrists.

30. In the course of beating and kicking him, the John Doe Police Officers pulled off his jacket and took it from him. It was a new, expensive ski jacket with fur trim. In the pockets of the jacket Vincenzo had, among other things, over $600 in cash, credit cards, his cell phone, video games, and identity documents. In the police car and at the station, Vincenzo repeatedly asked the Officers to return the jacket and his possessions, but they never did, then or since.

**The Police Arbitrarily Arrest And Detain Vincenzo, And
Delay Then Limit His Access To Medical Treatment**

31. Handcuffed, bleeding, and barely able to talk, Vincenzo was driven in a squad car to a police precinct on Staten Island. When he arrived at the police precinct, he was still bleeding from his nose and mouth. An officer at the precinct asked the Officers what happened to Vincenzo, and one of the Officers responded: "He fell."

32. Despite Vincenzo's obvious need for, and a request by him to go to a hospital, he was thrown in a cell and left there. Although Vincenzo asked to go to the hospital because he was having trouble breathing and was bleeding and in pain, the Police Officers did not call an ambulance until nearly an hour later. When an EMT finally arrived and was making notes on the

results of Vincenzo's pummeling, P.O. Tabora stood nearby and instructed the EMT not to put certain things down in his notes since they were "irrelevant," including, for example, the fact that the John Doe Officers had kicked Vincenzo in the testicles. Nonetheless, when the EMTs assessed Vincenzo's his condition, they saw he needed to go to the hospital.

33. Vincenzo was taken in handcuffs and leg irons to the pediatric emergency room at Staten Island University Hospital North, accompanied by P.O. Tabora. By the time he got to the Hospital, the Officers had made Vincenzo clean up his bleeding face.

34. At the Hospital, P.O. Tabora refused to remove the handcuffs and leg irons so as to allow Vincenzo to be examined or to go to the bathroom. In fact, Vincenzo was never let out of the shackles, which interfered with diagnostic and treatment procedures and caused him continued pain and humiliation. With P.O. Tabora at the doctor's side and monitoring his examination, the doctor said he would not examine the injury the police caused to Vincenzo's testicles. P.O. Tabora also refused to let Vincenzo's parents talk either to their son or to the doctor.

35. From the Hospital, Vincenzo was taken back to the police precinct, where he was put in a jail cell and held for hours, until he was arraigned before a judge on the afternoon of December 23, 2011. The only food he was given was too unsanitary to eat.

36. As a post hoc justification for Vincenzo's mistreatment, P.O. Tabora swore a criminal complaint that charged Vincenzo with three misdemeanors: disorderly conduct, resisting arrest, and obstructing governmental administration in the 2nd degree. None of these had any factual basis, as witnesses from the crowd tried to tell the Officers. Vincenzo pled not guilty to all charges and was released.

**The Police Officers' Outrageous Conduct
Has Caused Vincenzo Severe And Ongoing Harm**

37. Vincenzo's severe abuse by the police resulted in physical injuries to his head, jaw, mouth, face, neck, back, groin, and legs, among other parts of his body. When he woke up the next day he could not swallow and started throwing up uncontrollably. The dentist was unable to examine him because his mouth was too swollen. In the immediate aftermath of his beating Vincenzo lost 18 pounds because his throat and jaw were so inflamed and bruised that he could barely open his mouth and could not eat for days. He had to return to the emergency room on Christmas eve, and since then has had to make countless trips to a variety of doctors to treat the ongoing injuries to his neck, back, mouth, head, groin, legs, arms, and wrists. He wore a splint on his right wrist for over a month as a result of handcuffs that the Police Officers refused loosen despite Vincenzo's repeated pleas of intense pain.

38. Vincenzo has had continuous nightmares and is still traumatized by his beating and arrest. In fact, he has never been the same since that December day. Once a happy teenager, his mistreatment by the Officers has caused to become fearful, anxious, withdrawn, depressed, and to lose interest in social interactions. His enthusiasm for school – and for life – has dwindled. His relationships with family and friends have become strained at best. He has sought treatment for these lingering effects from mental health professionals, which has been only minimally successful while also disrupting his school schedule. In short, he has suffered, and continues to suffer, severe and prolonged emotional distress, mental anguish, humiliation, and anxiety, all of which has fundamentally transformed him as a person.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Excessive Force)

39. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

40. By engaging in the conduct described above, Defendant Police Officers, acting under color of state law, unnecessarily, unjustifiably and without probable cause or any lawful basis whatsoever, used excessive physical force against Vincenzo, and did so intentionally and willfully, despite that Vincenzo was not engaging in any conduct to physically resist or confront the Police Officers.

41. By engaging in the conduct described above while Vincenzo was defenseless and not engaging in any conduct to resist or confront the Police Officers, the Defendant Police Officers used a degree of physical force against Vincenzo that was objectively unreasonable, in violation of Vincenzo's Fourth and Fourteenth Amendment rights.

42. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – False Arrest)

43. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

44. By engaging in the conduct described above, Defendant Police Officers, acting under color of state law, deliberately and intentionally confined Vincenzo to police custody, from which he was not free to leave, by arresting him without probable cause, transporting him to the police precinct, maintaining him in police custody at the Staten Island Hospital, and

holding him in jail, as described above, until he was released from police custody after his arraignment on December 23, 2011.

45. Vincenzo was at all times held in custody against his will, and such confinement was completely without justification, probable cause, or any other lawful basis. Far from resisting the Police Officers' authority, provoking, acting out, or doing anything at all to obstruct the Officers in performing their duties outside the Mall, Vincenzo was attacked from behind by the John Doe Officers, thrown to the ground by them, and lay on the ground helpless while a swarm of the John Doe Officers descended on and assaulted him. Once they finished beating him, rather than letting him go the John Doe Officers continued to unlawfully confine Vincenzo based on their false assessment of his conduct on the line outside the Mall.

46. By confining Vincenzo against his will and without probable cause or any other lawful justification, the Defendant Police Officers deprived Vincenzo of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

47. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

### THIRD CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Inadequate Medical Care)

48. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

49. After being beaten, kicked, punched and abused by P.O. Tabor and the John Doe Police Officers as set forth above, Plaintiff was moaning and writhing in pain, was bleeding from the nose and mouth, and had an obvious need for medical attention.

50. Despite such obvious need, P.O. Tabor and the John Doe Police Officers, acting under color of state law, allowed Vincenzo to languish in a squad car and at the precinct, rather

than obtaining medical treatment for him. When Vincenzo was finally taken to the hospital, P.O. Tabora and the John Doe Police Officers also interfered with the doctors' treatment of his injuries.

51. By their acts and/or omissions, P.O. Tabor and the John Doe Police Officers acted with deliberate indifference to Vincenzos serious medical needs, and failed to secure timely and adequate medical attention and treatment for Vincenzo required for his serious injuries that the Defendant Police Officers caused.

52. By their acts and/or omissions, Defendant Police Officers violated Vincenzo's rights guaranteed by the due process clause of Fifth and Fourteenth Amendments to the United States Constitution.

53. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

## FOURTH CLAIM FOR RELIEF
### (42 U.S.C. § 1986 – Failure to Intervene)

54. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

55. Each of the Defendant Police Officers had an affirmative duty to intervene on Vincenzo's behalf to prevent the violation of Vincenzo's constitutional rights set forth above.

56. Despite a realistic opportunity to do so, Defendant Police Officers, acting under color of state law, failed to intervene on Vincenzo's behalf to prevent the violation of his constitutional rights and severe injury to him. Such failure to intervene was malicious and/or demonstrated an intentional, reckless, and/or negligent indifference to Plaintiff's safety and legal rights, in violation of 42 U.S.C. § 1986.

57. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

## FIFTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Supervisory Liability)

58. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

59. Upon information and belief, at all relevant times, certain of the John Doe Police Officers were senior and supervisory personnel at the NYPD (the "Supervisory Officers"), with supervisory responsibilities for the more junior of the John Doe Police Officers. The Supervisory Officers were responsible for the training, instruction, supervision, and discipline of the junior Officers who committed the specific acts and omissions complained of herein.

60. The Supervisory Officers were grossly negligent in supervising the more junior of the John Doe Police Officers when, acting under color of state law, they either joined in applying excessive physical force and violence against Vincenzo as described above or failed to prevent the more junior officer from doing so, despite that the unconstitutional conduct that was occurring in their presence and they could have intervened to stop it.

61. The Supervisory Officers exhibited a deliberate indifference to Vincenzo's rights by failing to properly supervise the more junior of the John Doe Police Officers, when, acting under color of state law, they either joined in applying excessive physical force and violence against Vincenzo as described above or failed to prevent the more junior officer from doing so, despite that the unconstitutional conduct that was occurring in their presence and they could have intervened to stop it.

62. If they had exercised appropriate supervision over the more junior John Doe Police Officers on the scene, the Supervisory Officers could have prevented the use of an

excessive and unconstitutional degree force against Vincenzo and Vincenzo would not have been injured, or his injuries would have been less severe.

63. The Supervisory Officers' conduct directly and proximately caused Vincenzo severe harm.

## SIXTH CLAIM FOR RELIEF
### (Negligent Hiring, Training, and Supervision)

64. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

65. At all relevant times, P.O. Tabor and the John Doe Police Officers were employed by defendant NYPD, a department and/or agency of defendant City, and were acting in the scope of their employment when the acts and omissions complained of herein occurred.

66. At the relevant times, the City and the NYPD had a duty to exercise reasonable care in the hiring, training, and supervision of its employee police officers so that the rights of individuals they encounter when performing their duties would not be violated.

67. The City and NYPD failed to exercise reasonable case in the hiring training, and supervision of its employees, including P.O. Tabor and the John Doe Police Officers. The City and NYPD knew or should have known that P.O. Tabor and the John Doe Police Officers had a propensity to engage in brutal and violent conduct toward civilians and to falsely identify individuals as being confrontational, disruptive, or resistant when a true assessment of the facts and circumstances would have shown otherwise.

68. By reason of the City's and the NYPD's negligence, Vincenzo has been severely harmed as set forth in this Complaint.

## SEVENTH CLAIM FOR RELIEF
### (Assault)

69. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

70. By their conduct described above, Defendant Police Officers intentionally and willfully came into physical contact with Vincenzo in order to inflict physical injury on him, including by kicking, punching, beating and throwing him as described above. Defendant Police Officers deliberately brutalized Vincenzo, arbitrarily and without justification, descended on him in large number and continuously and intentionally kicked, punched, and beat him, despite Vincenzo's defenseless position, lack of resistance, and pleas for help.

71. The acts of Defendant Police Officers placed Vincenzo in imminent apprehension of overwhelming physical harm from which he could not escape until the Police Officers on their own decided to stop brutalizing him.

72. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

## EIGHTH CLAIM FOR RELIEF
### (Battery)

73. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

74. By their conduct described above, Defendant Police Officers intentionally and willfully came into physical contact with Vincenzo in order to inflict physical injury on him, including by kicking, punching, beating and throwing him as described above. Defendant Police Officers deliberately brutalized Vincenzo, arbitrarily and without justification, descended on him

in large number and continuously and intentionally kicked, punched, and beat him, despite Vincenzo's defenseless position, lack of resistance, and pleas for help.

75. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

### NINTH CLAIM FOR RELIEF
(False Arrest/False Imprisonment)

76. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

77. By engaging in the conduct described above, Defendant Police Officers deliberately and intentionally confined Vincenzo to police custody, from which he was not free to leave, by arresting him without probable cause, transporting him to the police precinct, maintaining him in police custody at the Staten Island Hospital, and holding him in jail, as described above, until he was released from police custody after his arraignment on December 23, 2011.

78. Vincenzo was at all times held in custody against his will, and such confinement was completely without justification, probable cause, or any other lawful basis. Far from resisting the Police Officers' authority, provoking, acting out, or doing anything at all to obstruct the Officers in performing their duties outside the Mall, Vincenzo was attacked from behind by the John Doe Officers, thrown to the ground by them, and lay on the ground helpless while a swarm of the John Doe Officers descended on and assaulted him. Once they finished beating him, rather than letting him go the John Doe Officers continued their unlawful confinement of Plaintiff based on their false assessment of Plaintiff's conduct on the line outside the Mall.

79. The Defendant Police Officers' conduct directly and proximately caused Vincenzo severe harm.

## TENTH CLAIM FOR RELIEF
(Conversion)

80. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

81. Vincenzo was and is the rightful owner of the ski jacket he was wearing on the night of December 22, 2011, and of the money and personal possessions that were in the jacket pockets (the "Seized Possessions") when the John Doe Police Officers grabbed the jacket off him, as described above.

82. None of the Defendants has ever returned the Seized Possessions to Vincenzo.

83. Continued possession by Defendants of the Seized Possessions, and failure to return them to Vincenzo, are unauthorized.

84. Vincenzo has been damaged by Defendants' failure to return the Seized Possessions.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in his favor and against each Defendants on each of the claims set forth above, and award him compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; pre- and post-judgment interest; and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 4, 2012

                        Respectfully submitted,
                        **SCHLAM STONE & DOLAN LLP**

By: _____
      Robert L. Begleiter

Jeffrey M. Eilender
Elizabeth Wolstein
26 Broadway
New York, New York 10004
Telephone No.: (212) 344-5400
Facsimile No.: (212) 344-7677
Email: jme@schlamstone.com
Email: rbegleiter@schlamstone.com
Email: ewolstein@schlamstone.com

*Attorneys for Plaintiff*