# SCHLAM STONE & DOLAN LLP

HARVEY M. STONE
RICHARD H. DOLAN
WAYNE I. BADEN
MICHAEL A. BATTLE
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JEFFREY M. EILENDER
JOHN M. LUNDIN
DAVID J. KATZ
JONATHAN MAZER
ERIK S. GROOTHUIS
ROBERT L. BEGLEITER
ELIZABETH WOLSTEIN

26 BROADWAY
NEW YORK, N.Y. 10004

(212) 344-5400
TELECOPIER: (212) 344-7677
www.schlamstone.com

PETER R. SCHLAM (1944-2005)
OF COUNSEL
RONALD G. RUSSO
MARY W. ANDERSON
HILLARY S. ZILZ
BRADLEY J. NASH
VITALI S. ROSENFELD

NIALL D. O'MURCHADHA
ANDREW S. HARRIS
SAMUEL L. BUTT
RAFFI MELKONIAN

January 7, 2014

**By ECF**
The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>Re: <u>Vincenzo Gavrity v. City of New York, et al.</u>, 12-CV-6004 (KAM) (VMS)

Dear Judge Scanlon:

We represent Plaintiff Vincenzo Gavrity in the above-referenced action against New York City and a number of NYPD officers for excessive force and other constitutional and state law violations. We write respectfully to request a conference at the Court's earliest convenience to seek the Court's assistance in addressing and preventing a repeat of the disruptive and unprofessional deposition conduct of defense counsel Arthur Larkin, Esq., of the New York City Corporation Counsel, at the deposition yesterday of defendant Sergeant Joseph Durante. Plaintiff is scheduled to take five more depositions of the defendant police officers between tomorrow, January 8, and next Thursday January 16. Nonetheless, because of the egregious nature of Mr. Larkin's conduct—which included interrupting and delaying the deposition, making repeated denigrating and insulting comments to Plaintiff's counsel, and encouraging unsupported and improper objections—and likelihood that it will recur if not prevented by the Court, we believe we cannot go forward with the depositions until the Court rules on this application, as it will result in Plaintiff incurring unnecessary attorneys' fees caused by the obstructionist conduct. As set forth below, we respectfully request that (i) the Court impose monetary sanctions to be paid by Mr. Larkin personally—not by the City—commensurate with the attorneys' fees Plaintiff has incurred due to Mr. Larkin's obstructive and improper conduct, and that (ii) Mr. Larkin either be barred from attending future depositions in this case or that any depositions Mr. Larkin attends be attended and supervised by this Court.

In addition, we request that defense counsel be ordered to (i) refrain from making baseless and improper objections to proper deposition questions, objections that serve no purpose other than to improperly signal to the witness, falsely, that the question is objectionable or should be answered in a certain way, and to (ii) re-produce Sergeant Durante for deposition to answer at

least two questions he was improperly directed not to answer, which are identified below, with the fees and costs for such re-deposition to be paid by the Defendants. Because of the need to include numerous deposition excerpts in making this application, we respectfully request permission to exceed by 1.5 pages the 4-page limit specified in the Court's Individual Rules.

### A. Mr. Larkin's Interruption Of The Deposition To Review Privately With The Deponent A Video Produced By Plaintiff More Than Eight Months Ago, Based On His False Assertion That The Video Was Not Produced

The deposition of Sergeant Durante began at approximately 9:40 a.m. yesterday, with only Assistant Corporation Counsel Ms. Wachs appearing on behalf of Sergeant Durante. At approximately 11:55 a.m., **two hours after the deposition began**, Mr. Larkin, who had never previously appeared or communicated with us in the case, marched into the deposition room and announced that he was threatening to shut down the deposition because he understood that we were preparing to show the deponent a videotape that he falsely asserted had not been produced in discovery. The following is an excerpt from the court reporter's rough draft of the deposition transcript that occurred within moments of Mr. Larkin entering the deposition room:

> MR. LARKIN: We understand that there may be a video of this incident. And if there is, I'd like to see it now, if you have it, before we continue the questioning of the officer.
>
> MS. WOLSTEIN: You have the video.
>
> MS. WACHS: I don't have the video.
>
> MS. WOLSTEIN: We produced the video to you.
>
> MS. WACHS: Seriously, I've never seen a video of this.
>
> MR. ROSENFELD: We produced it in the e-mail to you. I can bring you the e-mail.
>
> MR. LARKIN: We're not going to continue the deposition until we see the video and make a decision as to whether we need to stop the deposition and continue on another day, at a point in time, when we've had a chance to look at the. [sic]

(Rough Tr. 78:1-6). This excerpt, and all the other cited deposition excerpts are included in Exhibit A hereto in ascending page order.

We promptly retrieved our email dated May 15, 2013—more than eight months ago—confirming production of three videos to Ms. Wachs, including the one we had set up on the laptop in the deposition room that Ms. Wachs evidently advised Mr. Larkin about during the

deposition. Our May 15, 2013 email producing the videos is attached to this letter as Exhibit B. After our email showed the demonstrably false nature of Mr. Larkin's announcement that the videos had never been produced, Ms. Wachs offered to "stipulate" that the videos were produced more than eight months ago, on May 15, 2013. (Rough Tr. 104:16-17).

Nonetheless, Mr. Larkin, Ms. Wachs, and the deponent left the deposition room and entered a different conference room to review, for the first time, as Sergeant Durante's testimony showed, the three videos we produced in discovery more than eight months ago. I knocked on the conference room door and asked them to return to the deposition room so that we could continue the deposition. Mr. Larkin refused. I then told Mr. Larkin that I wished to make a statement on the record and asked that he return to the deposition room to be present for that. He again refused to return to the deposition room, and the three remained in the separate conference room to review the videos. I returned to the deposition room and made the following statement on the record to memorialize what had happened:

> MS. WOLSTEIN: I'm going to make a statement on the record. This is a statement on the record. I invited counsel for the other side to be present and they declined. So, what's happening is it's 12:10. This new counsel came and disrupted the deposition claiming that the video had not been produced, which I believe is on the record. We sent an e-mail, we sent Melissa a copy of the e-mail that we sent in May sending her the videos that Mr. Larkin claims were not produced and the e-mail shows that, on Wednesday, May 15, 2013 videos were produced to the other side. I requested them to return to the deposition room for the deposition and they declined stating that they were intending to do their deposition prep by watching the video, which they've had since May 15, 2013. And I informed them we believe this is disruptive unacceptable conduct and request them to come back to the deposition and they declined. We're now going to time their time out of the office disrupting the deposition. I'm sorry, their time out of the deposition room. We began our break at 11:50. We'll note the time we go back for the questioning.

(Rough Tr. 81:5-82:6.) We went back on the record at 12:14 pm. (*Id.* at 82:9). Mr. Larkin's interruption of the deposition therefore lasted 24 minutes.

Upon resumption of the questioning, Sergeant Durante testified that during the break he viewed all three videos and it was the first time he was seeing them. (Rough Tr. at 82:18-24). I asked whether he had discussed the videos with his counsel, and Mr. Larkin, **who was not defending the deposition**, improperly instructed Sergeant Durante not to answer this yes or no question. (Rough Tr. at 82:18-83:6). To remedy this improper instruction we request that defense counsel be ordered to re-produce Sergeant Durante for deposition, at defendants' expense, for the purpose of answering this and other questions he was improperly instructed not to answer.[1]

---

[1] We are currently reviewing yesterday's rough transcript for additional questions the deponent was improperly instructed not to answer and expect to supplement this request at the conference. At a minimum, Sergeant Durante should be recalled to answer two questions

### B. Mr. Larkin's Comments Insulting and Denigrating Plaintiff's Counsel

Mr. Larkin also obstructed the deposition by interjecting comments to insult and denigrate the undersigned during my questioning of the defendant. Although he was not defending the deposition, he supported Ms. Wachs' inappropriate objection to the question, "Is there a press office at the 122 precinct?" by saying that the basis for the objection was that "the question is ridiculous." (Rough Tr. 96:8-97:2). He continued with a speech culminating in a comment denigrating the questioner: "As you know, 1PP has a press office, public relations office, deputy commissioner for public information. If anyone who practices. . . . Anyone who practices in this area know this is. If you want to bother this police officer to ask him whether there is a press office at a precinct, be our guest."

Likewise, in another instance Mr. Larkin proffered an improper basis for an improper objection, followed by a denigrating comment about the questioner:

> Q. What you've been describing is the policy that prevailed at the 122 for vouchering personal property of an arrestee?
>
> MS. WACHS: Objection. You can answer.
>
> ...
>
> MR. LARKIN: You're asking him about policies, and I've already said to you that the witness is not a 30(b)(6) witness to testify about the policy. He can testify about his understanding. And if you formulate your questions properly, we wouldn't object. Since you seem to have difficulty doing that, we need to make those objections on the record.

(Rough Tr. 114:1-17).

### C. The Continuous Improper Objections Of Ms. Wachs and Mr. Larkin To Questions About The Deponent's Experiences In The Police Department and Police Practices and Policies

In injecting himself in the defense of the deposition, Mr. Larkin also encouraged and participated in Ms. Wachs' continuous improper objections to entirely proper questions concerning the deponent's training, and the Police Department policies and practices that govern the conduct at issue in this action. The objections served no legitimate purpose and only served to delay and obstruct the questioning, and seemingly to signal to the deponent, falsely, that the question was somehow improper so as to guide him in giving answers. Given that at least five additional police officer depositions remain to be taken by Plaintiff, we ask that the Court order Ms. Wachs and Mr. Larkin to refrain from this improper deposition conduct.

---

concerning whether he lives inside or outside the five boroughs of New York City, which he was improperly instructed not to answer. (Rough Tr. 181:15-17, 182:6-9).

There are many examples of Ms. Wachs lodging the improper, "Objection – you can answer," in response to a proper question. The following is a sample:

- To the question, "What were you taught in the police academy in the law component about making arrests?" (Rough Tr. 20:2-3);
- To the question, "Who was your supervisor during that time?" (Rough Tr. 25:2-3);
- To the question, "Who were they?" – i.e. the "multiple supervisors" as stated by the witness (Rough Tr. 25:9-10);
- To the question, "besides the patrol guide, were there any other manuals that governed how you were supposed to conduct yourself as a police officer? (Rough Tr. 42:5-6). When asked to clarify the basis for this objection, Ms. Wachs declined to provide one, ultimately saying "I'm declining to speak with you. So you can continue speaking with him." (Rough Tr. 42:8-23).
- To the question, "What is the standard police department procedure for safeguarding property of an arrestee? (Rough Tr. 110:23-111:1)
- To the question, "How does the policy or the procedure [for vouchering an arrestee's personal property] work, then? (Rough Tr. 112:5-8):
- To the question, "What you've been describing is the policy that prevailed in the 122 for vouchering personal property of an arrestee?" (Rough Tr. 114:1-5);
- To the question "who would know" whether "the police department conduct[ed] an investigation internally of what happened at the mall that night?" (Rough Tr. 120:6-12); and
- To the question, "In what circumstances does the police department conduct internal investigations of incidents after the fact? (Rough Tr. 121: 4-8).

The single time Ms. Wachs explained the basis of her objection makes apparent that the objection lacks any legitimate basis under the Federal Rules:

> Q. Did the police department conduct an investigation internally of what happened at the mall that night?
> A  I don't know.
> Q  Who would know that?
> MS. WACHS: Objection. You can answer.
> A  I guess Police Officer Tabora.
> MS. WOLSTEIN: You're objecting to my question of who would know who at the police department would conduct an investigation.
> MS. WACHS: You're asking him for what information someone may have and he may not have the basis for that.
> MS. WOLSTEIN: He can tell me what he knows.
> MS. WACHS: That's why I allowed him to answer.
> MS. WOLSTEIN: It's not a proper objection to begin with.

(Rough Tr. 120:6-23.).

      These questions are not only legitimate areas of inquiry under the Federal Rules, many of them are central to Plaintiff's claims and defendants' defenses. When asked to stop making the improper and baseless objections, Ms. Wachs and Mr. Larkin declined. Accordingly, we respectfully request that the Court issue an order directing Ms. Wachs and Mr. Larkin (and any other defense counsel) to refrain from making any objections at future depositions other than (a) objections to form, and (b) objections based on a recognized litigation privilege.

      Further, we estimate that Mr. Larkin's improper and obstructionist conduct extended the deposition time by approximately 1.5 hours, and his conduct will have required us to spend an additional four to five hours preparing this letter and appearing for the requested conference before Your Honor, to seek to prevent similar conduct by Mr. Larkin at the future depositions. Accordingly, we respectfully request that the Court issue an order directing that Mr. Larkin (i) personally pay a monetary sanction to Plaintiff in the amount of $2,850, representing 5.5 hours of attorneys' fees incurred by Plaintiff as a result of Mr. Larkin's improper conduct; (ii) be excluded from all future depositions in this case or in the alternative that any future depositions to be attended by Mr. Larkin be supervised by this Court.

      Finally, because Mr. Larkin's conduct has resulted in the need to suspend the scheduled depositions in order to make this application, we ask that the January 17, 2014 deadline for naming additional police officer defendants be extended by a reasonable period of time, pending the Court's ruling on this application.

      Thank you for your consideration of these matters.

                                                  Respectfully submitted,
                                                  s/

                                                  Elizabeth Wolstein

Cc:    Melissa Wachs, Esq. (by ECF and email)
        Arthur Larkin, Esq. (by ECF and email via Ms. Wachs)