```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
VINCENZO GAVRITY,                                            :
                                                             :
                            Plaintiff,                       :
                                                             :                **MEMORANDUM AND ORDER**
              -against-                                      :                12-CV-6004 (KAM) (VMS)
                                                             :
CITY OF NEW YORK, NEW YORK CITY                              :
POLICE DEPARTMENT, POLICE OFFICER                            :
JOSE TABORA, LIEUTENANT RICHARD                              :
PERULLO, SERGEANT JOSEPH DURANTE,                            :
POLICE OFFICER DAVID FIGUEROA,                               :
POLICE OFFICER TIMOTHY NEISS, POLICE                         :
OFFICER JAN FOLVARSKY, and JOHN DOE                          :
DEFENDANTS 1-5,                                              :
                                                             :
                            Defendants.                      :
------------------------------------------------------------ x
```

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Vincenzo Gavrity ("Plaintiff") brings this action against Defendants City of New York, the New York City Police Department, Lieutenant Richard Perullo, Sergeant Joseph Durante, Police Officer Jose Tabora, Police Officer David Figueroa, Police Officer Timothy Neiss and Police Officer Jan Folvarsky ("Defendants") under 42 U.S.C. § 1983, alleging, inter alia, that Defendants falsely arrested Plaintiff, used excessive force and deprived Plaintiff of adequate medical care relating to injuries he suffered during the arrest. Docket No. 26.

Before the Court is Plaintiff's motion asking that Defendants' counsel Arthur Larkin and Melissa Wachs be sanctioned for alleged misconduct during the deposition of Defendant Durante, and that Mr. Larkin and Ms. Wachs be ordered to pay the attorneys' fees and costs that Plaintiff incurred as a result. Docket Nos. 37, 41. Defendants opposed and cross-moved for sanctions of their own, also for alleged deposition misconduct on the part of Plaintiff's counsel Elizabeth Wolstein. Docket No. 40. In addition to costs and fees, both Parties seek other relief

as the Court deems necessary.  Docket Nos. 37, 40-41.

In this Memorandum and Order, I describe and discuss the alleged misconduct that occurred during Defendant Durante's deposition.  For the following reasons, **I grant in part** and **deny in part** Plaintiff's motion and **deny** Defendants' motion.[1]

## I.    The Videotape Incident

On January 6, 2014, Ms. Wolstein began her deposition of Defendant Durante at 9:40 a.m.  Docket No. 37.  Ms. Wachs was present to defend the deposition.  Id.  At some point that morning, Ms. Wolstein stated her intention to show Defendant Durante videotapes containing footage relevant to the alleged incident, which Plaintiff had produced in discovery many months earlier.  Id.  Ms. Wachs contacted Mr. Larkin, one of her supervisors in the New York City Law Department, to alert him to the impending videotape screening because Ms. Wachs was concerned that Defendant Durante had never been shown the videotapes during deposition preparation.  Id.  Mr. Larkin, who had not made an appearance in the action prior to that day, came to the deposition at 11:55 a.m., and both Mr. Larkin and Ms. Wachs challenged Ms. Wolstein's showing of the video to Defendant Durante.  Id.; Docket No. 36 (Mr. Larkin's 1/6/2014 notice of appearance).

Mr. Larkin's conduct was improper.  Only one attorney may lodge objections during a deposition.  See, e.g., U.S. v. Frayer, 9 F.3d 1367, 1374 (8th Cir. 1993) (affirming the district court's ruling that the defense attorneys should not "double team" a witness with respect to objections, that only one co-defendant's counsel could lodge objections during a cross-examination, and that other counsel who wished to lodge an objection should confer with the

---

[1] I note that Plaintiff and Defendants exceeded the page limit for letter motions set by my Individual Rules.  Counsel acknowledged their noncompliance and offered some explanation for why they believed it was justified.  Docket Nos. 37, 40.  Litigants should seek permission before filing excess pages, particularly when, in the context of motions such as these, they ask the Court to award them attorneys' fees incurred in briefing the motion.

2

attorney designated to defend during cross-examination); Fed. R. Civ. P. 30(c) ("The examination and cross-examination of a deponent proceed as they would at trial . . . ."). Here, Ms. Wachs was the attorney defending Defendant Durante's deposition, and Mr. Larkin should not have joined the discussion on the record. Yet he did, with the following exchange:

> MR. LARKIN:
>
>> We understand that there may be a video of this incident. And if there is, I'd like to see it now, if you have it, before we continue the questioning of the officer.
>
> MS. WOLSTEIN:
>
>> You have the video.
>
> MS. WACHS:
>
>> I don't have the video.
>
> MS. WOLSTEIN:
>
>> I produced the video to you.
>
> MS. WACHS:
>
>> Seriously, I've never seen a video of this.
>
> MR. ROSENFELD:
>
>> We produced it in the e-mail to you. I can bring you the e-mail.
>
> MR. LARKIN:
>
>> We're not going to continue the deposition until we see the video and make a decision as to whether we need to stop the deposition and continue on another day, at a point in time, when we've had a chance to look at the [video].

Docket No. 37, Exh. A.

Ms. Wolstein showed Mr. Larkin and Ms. Wachs the May 15, 2013 e-mail confirming

3

that Plaintiff had timely produced the videotapes, and Ms. Wachs agreed that the e-mail demonstrated that Defendants had received the videotapes. Docket No. 37. Mr. Larkin and Ms. Wachs nonetheless stopped the deposition and ushered Defendant Durante to a conference room in order to review the videotapes with him before the deposition continued. Id. The deposition resumed at 12:14 p.m. Id. All told, the video-viewing interruption of the deposition lasted nineteen minutes. Id.[2]

The matter does not require much further discussion, as Defendants' counsel concede that they were to blame for the videotape incident because they "bore the responsibility of showing [the videotapes] to [Defendant Durante] prior to the deposition," and furthermore, they "should have . . . attempted to resolve the matter with [P]laintiff's counsel in good faith" or "called the court and asked for a ruling." Docket No. 40. I agree with Defendants that they should have handled the videotape issue differently.

Although Ms. Wolstein alleges that the way Mr. Larkin and Ms. Wachs conferred with Defendant Durante interrupted the deposition, she does not discuss whether the conference would have been permissible at a different moment of the day, for example, during lunch or a break. Docket Nos. 37, 40, 41. Assuming, arguendo, that Ms. Wolstein would have objected to a lunchtime discussion between Mr. Larkin, Ms. Wachs and Defendant Durante about the videotapes, she did not have a question about the videotape pending during that break so no sanctions relief is necessary. The rules of this Court do not prohibit "discussions between

---

[2] Plaintiff claims that Mr. Larkin's interruption caused a twenty-four minute delay in the deposition. Docket No. 37. However, insofar as Plaintiff claims that Mr. Larkin arrived at 11:55 a.m. and that the deposition resumed at 12:14 p.m., it seems that the delay lasted nineteen minutes. Id. Defendants argue that when Mr. Larkin arrived, the deposition was on a break which was to expire at 12:00 p.m. such that the delay was only fifteen minutes. Docket No. 40. I find it irrelevant to my analysis whether the delay was fifteen, nineteen or twenty-four minutes, so I will hereinafter refer to the delay as one of nineteen minutes.

4

counsel and client during a deposition other than when a question is pending," Few v. Yellowpages.com, LLC, No. 13 Civ. 4107 (RA) (MHD), 2014 WL 3507366, at *1 (S.D.N.Y. July 14, 2014), although "[a]ttorney-client conferences should be kept to a minimum," Abu Dhabi Commercial Bank v. Morgan Stanley & Co., No. 08 Civ. 7508 (SAS), 2011 WL 4526141, at *8 (S.D.N.Y. Sept. 21, 2011), adopted by 2011 WL 4526137 (S.D.N.Y. Sept. 29, 2011). See Local Civ. Rule 30.4 ("An attorney for a deponent shall not initiate a private conference with the deponent while a deposition question is pending, except for the purpose of determining whether a privilege should be asserted."); Local Civ. Rule 30.4, Committee Note (stating that the while-a-question-is-pending rule is a "minimum standard" which does not mean that "other types of obstructive conduct during depositions may not be dealt with by appropriate orders of the Court"); but see Musto v. Transport Workers Union of Am., AFL-CIO, No. 3 Civ. 2325 (DGT) (RML), 2009 WL 116960, at *2 (E.D.N.Y. Jan. 16, 2009) (noting that Local Civil Rule 30.4's precursor more broadly stated that "[a]n attorney for a deponent [was not permitted to] initiate a private conference with the deponent during the actual taking of a deposition, except for the purposes of determining whether a privilege should be asserted," regardless of whether a question was pending or not); Hall v. Clifton Precision, 150 F.R.D. 525, 529 (E.D. Pa. 1993) (stating that when a document is about to be shown to a deponent, "there need not be an off-the-record conference between witness and lawyer in order to ascertain whether the witness understands the document").

## II. The Two Questions Which Mr. Larkin Instructed Defendant Durante Not To Answer Must Be Answered

Once the deposition resumed after the videotape incident, Defendant Durante testified that his review of the videotapes in the conference room with Mr. Larkin and Ms. Wachs moments earlier was the first time he had seen the film. Docket No. 37. Ms. Wolstein asked

5

Defendant Durante whether he had discussed the videotapes with Mr. Larkin, and Mr. Larkin instructed Defendant Durante not to answer. Id. Ms. Wolstein contends that this instruction not to answer was inappropriate and that the Court should order Defendant Durante to be re-deposed at Defendants' expense. Id. I take this part of Plaintiff's motion to be a motion to compel, rather than a motion for sanctions.

Mr. Larkin argues that Ms. Wolstein's question "went beyond facts and sought the content of communications" between him and Defendant Durante such that his privilege claim was proper. Docket No. 40. I have read the deposition transcript, and I find that there is no privilege as to this question. This is the relevant colloquy between Ms. Wolstein, Mr. Larkin and Defendant Durante:

> MS. WOLSTEIN:
>
>> Have you finished your deposition prep?
>
> MR. LARKIN:
>
>> Don't respond to that. It's not appropriate.
>
> MS. WOLSTEIN:
>
>> . . . During the break did you watch the video? Did you watch any videos?
>
> DEFENDANT DURANTE:
>
>> I did.
>
> MS. WOLSTEIN:
>
>> How many?
>
> DEFENDANT DURANTE:
>
>> Three.
>
> MS. WOLSTEIN:

> Have you seen those videos before?
>
> DEFENDANT DURANTE:
>
> Never.
>
> MS. WOLSTEIN:
>
> Did you discuss the videos with your counsel? You can answer yes or no.
>
> MR. LARKIN:
>
> Don't answer.
>
> MS. WOLSTEIN:
>
> You can answer yes or no.
>
> MR. LARKIN:
>
> Don't answer.
>
> MS. WOLSTEIN:
>
> That's a proper question. We can mark it and decide what to do.

Dep. Tr. 82:10-83:6.

As a basic matter, Defendant Durante must answer a yes or no question as to whether he had a conversation with his counsel in the conference room because the fact of a conversation with counsel is not privileged. See Meyer Corp. U.S. v. Alfay Designs, Inc., No. 10 Civ. 3647 (CBA) (MDG), 2012 WL 3536987, at *5 (E.D.N.Y. Aug. 13, 2012) ("I find that [the attorney] sometimes . . . raised privilege objections in response to questions that did not clearly call for privileged information, particularly whether certain discussions had taken place. For example, [the attorney] objected prematurely to questions requiring a simple yes or no response [at various moments]. Questions to establish whether a discussion took place are permissible.") (citations to

transcript omitted); Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 79 n.12 (S.D.N.Y. 2010) ("[T]he [contested] documents . . . reveal no underlying legal advice, and the fact that a conference call took place . . . is not privileged."); Softview Computer Prods. Corp. v. Haworth, Inc., No. 97 Civ. 8815 (KMW) (HBP), 2000 WL 351411, at *3 (S.D.N.Y. Mar. 31, 2000) (stating that a document was not privileged when it showed "the fact that counsel had a conference with the patent examiner . . . and does not reveal any confidential communications"); State-Wide Capital v. Superior Bank, No. 98 Civ. 817 (HB), 2000 WL 20705, at *1 (S.D.N.Y. Jan.12, 2000) ("[T]he fact that a conversation occurred is not privileged[.]"); Coleman v. City of N.Y., No. 98 Civ. 8761 (LMM) (AJP), 1999 WL 493388, at *2 (S.D.N.Y. July 8, 1999) ("While [the] plaintiff's counsel was entitled to inquire whether the witness had spoken to Corporation Counsel about the action before the deposition, he cannot obtain the substance of the communications. To the extent the Assistant Corporation Counsel precluded even these predicate questions, [counsel] is to submit an affidavit from [the witness] (or interrogatory answer) to provide this predicate information."). Here, it was apparent that Defendant Durante and Defendants' counsel had taken time to view the videotape, given their actions mid-deposition. A question about whether they had discussed the immediately prior viewing is not an inquiry into the substance of any attorney-client privileged communication.[3]

In addition, Defendant Durante is obligated to provide Ms. Wolstein with additional information specific to his invocation of privilege. Where, as here, "a claim of privilege is

---

[3] In many circumstances, a question about whether counsel had discussed a particular piece of evidence with a witness might reveal privileged communications and attorney work product because it would reveal what the attorney thought was important or suspect evidence, or evidence about which the attorney believed the client was unsure. Here, there was no issue about counsel's selection of the evidence revealing strategy. The videotapes, as the subject of Ms. Wolstein's upcoming questioning, was the evidence reviewed in the deposition interruption, and it had been selected by Plaintiff's counsel, not Defendants' counsel. Here, the privilege is not disturbed by Ms. Wolstein's question.

8

asserted in objecting to . . . a deposition [question], and an answer is not provided on the basis of such assertion," Local Civil Rule 62.2(a)(2) requires the party asserting the privilege to provide the questioner with various information including, inter alia, "the general subject matter of the communication." Local Civ. Rule 26.2(a)(2) (listing the other information that a privilege claimant must provide to a deposition questioner as well). There is no indication in the record that Defendant Durante has satisfied this obligation, only that Mr. Larkin instructed Defendant Durante not to answer Ms. Wolstein's question. See Colton v. U.S., 306 F.2d 633, 638 (2d Cir. 1962) (stating that it was proper for a party seeking discovery to explore the general subject matter of the communications in order to determine "what, if any, areas may be inquired into further and what is protected by the attorney-client privilege"). In order to invoke a privilege as to any videotape-related discussions, Defendant Durante would have to provide Plaintiff's counsel with the general subject matter of the discussion. Ms. Wolstein's question seeks to ascertain only the general subject matter of the discussion via a yes or no question. Thus, her question is permissible, and Defendant Durante must answer it.

Ms. Wolstein also asked Defendant Durante whether he lived inside or outside the five boroughs of New York City, and Mr. Larkin instructed Defendant Durante not to answer that question. Docket No. 37. Defendants protest that a court has ruled that a police officer does not have to turn over his home address in discovery. Docket No. 37 (citing Collens v. City of N.Y., 222 F.R.D. 249, 254 (S.D.N.Y. 2004)). Collens is inapposite because the deposition transcript shows that Ms. Wolstein did not ask for Defendant Durante's home address, but instead, she asked the much more general question of whether he lived in one of New York City's five boroughs. Dep. Tr. 181:4-182:14. Asking Defendant Durante whether he is one of New York City's approximately 8.3 million inhabitants does not implicate Defendant Durante's privacy and

9

safety.

Defendants' invocation to Collens is also unavailing because even if the facts were more analogous to this action, Collens does not establish a per se rule that a police officer's personal information is always protected from discovery. Instead, whether disputed information is subject to the "official information privilege" is a fact-intensive inquiry specific to a particular case. In King v. Conde, 121 F.R.D. 180, 190 (E.D.N.Y. 1988), the court held that any party invoking the official information privilege (as Defendants do here) must first make a "substantial threshold showing" that disclosure would result in "specific harm to identified important interests." See Coggins v. Cty. of Nassau, No. 07 Civ. 3624 (JFB) (AKT), 2014 WL 495646, at *3 (E.D.N.Y. Feb. 6, 2014) (stating that a proponent of a law-enforcement privilege must make a "threshold showing" that as to the interests that would be harmed, how disclosure would cause the harm, and how much harm there would be); Pendleton v. City of N.Y., No. 10694/94, 2008 WL 5146791 at *4 (N.Y. Sup. Dec. 3, 2008) (stating that the official-information privilege, which is governed by federal common law, requires the party resisting disclosure to make a threshold showing of a specific hard connected to the disclosure of specific information). Assuming, arguendo, that Defendants successfully met this burden (which they have not), the interests for and against disclosure must still be balanced:

> The factors disfavoring disclosure are the threat to the safety of police officers, the invasion of the privacy of police officers, the weakening of law enforcement programs or procedures, the chilling of police investigative candor, the chilling of citizen complainant candor, and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information.

Morrissey v. City of N.Y., 171 F.R.D. 85, 92 (S.D.N.Y. 1997) (citing King, 121 F.R.D. at 190-

10

96); see Coggins, 2014 WL 495646, at *3 (after the privilege proponent satisfied the threshold showing of harm, a court will then "turn to the next prong and weigh the factors in favor of and against disclosure). Defendants have not made any argument within this framework.[4]

For these reasons, I find that Defendants have not justified their refusal to answer whether Defendant Durante lives within one of New York City's five boroughs.

Plaintiff requests that I order Mr. Larkin to produce Defendant Durante for a new deposition at Defendants' expense. Docket No. 37. I find this unnecessary. Both of Ms. Wolstein's questions seek yes or no answers such that it would be wasteful to coordinate a new deposition for what would be an extremely brief examination. Therefore, Defendant Durante must answer the two questions via sworn affidavit within five business days of this Order's issuance. See Coleman, 1999 WL 493388, at *2 (stating that an attorney's improper interruption of deposition questions could be remedied with an affidavit from the witness). This Order is without prejudice to Plaintiff to seek leave for re-examination at deposition if the responses are insufficient. See Meyer Corp. U.S., 2012 WL 3536987, at *6 (warning counsel that an inadequate affidavit to cure an improper instruction not to answer at deposition may result in a renewed deposition).

### III.    The Parties' Dueling Allegations Of Incivility

"A successful [deposition] process requires Parties, attorneys, and witnesses participating in depositions to conduct themselves with civility and decency." Abu Dhabi Commercial Bank, 2011 WL 4526141, at *9. "Counsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon [him], as long as the deposition is conducted under the caption of this court and proceeding under the

---

[4] Nor does Plaintiff, but this is at least consistent with Plaintiff's position which, unlike that of Defendants, is that the Court need not even reach the balancing test because Defendants fail to meet their initial burden under King.

11

authority of the rules of this court, counsel [is] operating as [an] officer[] of this court. [He] should comport [himself] accordingly." Id. at *7 (citing Hall, 150 F.R.D. at 528).

Ms. Wolstein alleges that Mr. Larkin made snide remarks in response to some of her deposition questions; for example, he said "[a]nyone who practices in this area [of the law] know[s] th[at]," or "if you [were to] formulate your questions properly, we wouldn't object." Docket No. 37. Mr. Larkin concedes that certain comments during the deposition were not "constructive." Docket No. 61 at 12 ("I will certainly accept some responsibility for . . . not being wholly constructive with all of my comments . . . ."). Mr. Larkin's comments appear to be minor and momentary lapses of judgment during the portions of the deposition transcript at issue here, not a consistent course of sanctionable conduct. I do not award sanctions for these statements.

For his part, Mr. Larkin complains that Ms. Wolstein was also rude during the deposition and that that was the reason he misbehaved himself. Docket No. 40. For example, Mr. Larkin complains that Ms. Wolstein stated on the record: "I'm going to note the improper objections and the disruptive nature and request that they stop." Dep. Tr. 194-196. This statement, which Mr. Larkin labels "gratuitous" and "rude," does not demonstrate unprofessional conduct. Docket No. 40. In fact, I find that comment to be a dispassionate observation of alleged violations of rules governing the conduct of depositions. I find it troubling that Mr. Larkin explains that he was rude to Ms. Wolstein because Ms. Wolstein offended him. Even if I found Ms. Wolstein's statement to have been unprofessional, which I do not, Mr. Larkin's belief that her statements gave him license to behave unprofessionally himself is a faulty premise. As the adage goes, two wrongs do not make a right.

Mr. Larkin also has other complaints that Ms. Wolstein was rude, for example, Mr.

12

Larkin complains that Ms. Wolstein asked, on seven separate occasions, that Ms. Wachs explain the basis of an objection, once by stating, "What on earth could be the basis of [that] objection?" Docket No. 40; Dep. Tr. 7-9, 71-73. Ms. Wolstein's tone in this particular exchange does seem to have been one of exasperation, but it was permissible for her to seek explanation for the objection. See Meyer, 2012 WL 3536987, at *4 ("Elaboration is permitted . . . where examining counsel requests the basis of the objection."). Accordingly, Ms. Wolstein was entitled to request that Ms. Wachs explain her objections.

Mr. Larkin also argues that Ms. Wolstein rudely chastised Ms. Wachs for seeking excessive breaks to confer with Defendant Durante by stating, "I would rather you not consult with the witness after every other question . . . I don't want to be taking breaks every three minutes so that you can coach the witness . . . We're going to [limit ourselves in this deposition] to one [such] break every 45 minutes . . . ." Docket No. 40; Dep. Tr. at 27-32. Ms. Wolstein's language gets right to the point, but I do not find it to be unprofessional. Ms. Wolstein implied that frequent conferences amounted to coaching the witness, which echoed "[t]he underlying reason for preventing private conferences," which is that "they tend, at the very least, to give the appearance of obstructing the truth." Hall, 150 F.R.D. at 528. That is why "[a]ttorney-client conferences should be kept to a minimum," which was plainly Ms. Wolstein's goal. Abu Dhabi Commercial Bank, 2011 WL 4526141, at *8. Given the Defendants' counsel's break should not have been taken to review the videotape without Ms. Wolstein's consent or the Court's approval, Ms. Wolstein's vigilance in seeking to avoid witness-coaching was understandable.

For the foregoing reasons, I **deny** Mr. Larkin's motion for sanctions against Ms. Wolstein. Docket No. 40. I find that Ms. Wolstein behaved professionally during the

13

deposition.

## IV. Defendants' Entitlement To A Deposition Transcript

Immediately after Ms. Wolstein filed her sanctions motion, Mr. Larkin moved this Court to compel Ms. Wolstein to provide him with a free copy of the rough deposition transcript that she had paid to obtain. Docket No. 38. Mr. Larkin provided no support for his request, and I denied the motion. Docket Entry 1/8/2014. Later, in Mr. Larkin's response in opposition to Ms. Wolstein's sanctions motion, Mr. Larkin cross-moved for an order compelling Ms. Wolstein to reimburse him for the money he spent ordering the transcript himself. Docket No. 40.

In light of the fact that I already denied Mr. Larkin this relief, I find that I need not revisit the question. Docket Nos. 38, 40; Docket Entry 1/8/2014. Assuming, arguendo, that I should treat Mr. Larkin's motion as one for reconsideration, I would still deny the request because Mr. Larkin argues no facts or law showing that reconsideration is warranted. Docket No. 40. In Mr. Larkin's cross-motion, he cites Federal Rule of Civil Procedure ("FRCP") 30(e)(1) for the first time, without any citation to supporting case law, as the legal basis for his claimed entitlement to have Plaintiff provide him with a free copy of the rough deposition transcript. Id. FRCP 30(e)(1) provides that

> [o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1). Nothing in this rule requires Ms. Wolstein to give Mr. Larkin a complimentary deposition transcript on twenty-four hours' notice for a reason that does not involve reviewing it to provide and explain errors in form and substance.

14

## V. The Parties' Allegations That Questions Were Improperly Phrased And Objections Improperly Made

FRCP 30(c)(2) provides in part that, at a deposition, "[a]n objection must be stated concisely and in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). "Thus, 'speaking objections' that cue a witness how to answer (or avoid answering) a question are prohibited." Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co., No. 09 Civ. 3701 (JPO) (JCF), 2013 WL 6439069, at *4 (S.D.N.Y. Dec. 9, 2013) (collecting cases). In Meyer, 2012 WL 3536987, at *4, the court instructed that attorneys should

> refrain, when making an objection, from stating that a question is vague, ambiguous or calls for speculation. Counsel should simply state, "Objection as to form." Similarly, objections as to foundation should be simply stated as such, "Objection, foundation." There should not be any comment . . . . Elaboration is permitted only where examining counsel requests the basis of the objection.

In light of the foregoing summary of how objections should be made without sending cues to a deponent, I find unavailing Ms. Wolstein's complaint that Ms. Wachs's "continuous" repetition of the phrase "Objection—you can answer" "seem[ed] to signal to the deponent, falsely, that the question[s were] somehow improper so as to guide him in giving answers." Docket No. 37. The phrase "Objection—you can answer" cannot be said to "elaborate . . . on [Ms. Wachs's] reasons for objecting," Applebaum v. Nat'l Westminster Bank, No. 7 Civ. 916 (DLI) (MDG), 2011 WL 8771843, at *6 (E.D.N.Y. Oct. 5, 2011); instead, I find that it conforms to Meyer and did not give any express cue to Defendant Durante, Meyer 2012 WL 3536987, at *4; cf. Abu Dhabi Commercial Bank, 2011 WL 4526141, at *7 (noting examples when the witness's attorney "asserted objections and added certain unnecessary statements that . . . could be interpreted as an effort to influence the witness's response"); Phillips v. Mfrs. Hanover Trust Co., No. 92 Civ. 8527 (KTD), 1994 WL 116078, at *3 (S.D.N.Y. Mar. 29, 1994) (reciting some of the defending

15

attorney's speaking objections and showing how the deponent's response seemed to parrot the content of those objections).[5]

Ms. Wolstein also suggests that Ms. Wachs's use of the phrase "Objection—you can answer" functioned to flag for Defendant Durante particular questions that he might want to think carefully about before answering, which would, of course, be improper. I do not find the record to show that that happened here. Ms. Wolstein complains that Ms. Wachs's objections were "continuous." Docket No. 37. Ms. Wachs's objections, had they been meant to flag some urgent situation requiring attention, would have been completely ineffectual as such when repeated over and over again without regard to context, as Ms. Wolstein implies.

Substance aside, Ms. Wolstein argues that Ms. Wachs should be sanctioned for the sheer volume of objections she made. Docket No. 37. In this respect, Ms. Wolstein says that Ms. Wachs lodged "many" objections, and lists nine examples. Id. It is true that some courts have considered excessive objections to be deposition misconduct, but they have most commonly done so through a percentage-of-pages analysis. In other words, by noting that the attorney defending the deposition make unjustified objections so frequently that his or her objections appear on a high percentage of the deposition transcript's pages. Compare Morales v. Zondo, Inc., 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (stating that the defending attorney appeared on more

---

[5] In terms of this elaboration, "[a]t least one secondary source has identified eleven grounds upon which a party or its counsel may state an objection to the form of a question posed at a deposition. Those grounds are:

> (1) compound; (2) asked and answered; (3) overbroad/calls for a narrative; (4) calls for speculation; (5) argumentative; (6) vague or unintelligible; (7) assumes facts not in existence; (8) misstates the record; (9) calls for an opinion from an unqualified witness; (10) leading where not permitted; and (11) lack of foundation.

Abu Dhabi Commercial Bank, 2011 WL 4526141, at *8 (citing to 2 Bus. & Com. Litig. Fed. Cts. § 20:59 (2d ed. 2005)).

16

than eighty-five percent of the deposition transcript's pages and finding sanctions appropriate), and Unique Concepts, Inc. v. Brown, 115 F.R.D. 292, 293-94 (S.D.N.Y. 1984) (finding that the defending attorney appeared on more than ninety-one percent of the deposition transcript's pages and finding sanctions appropriate), with Phillips v. Mfrs. Hanover Trust Co., 1994 WL 116078, at *3 (S.D.N.Y. Mar. 29, 1994) (stating that the defending attorney appeared on approximately sixty percent of the deposition transcript's pages and finding that sanctions were not appropriate). Here, Ms. Wolstein has not provided the Court with a percentage-of-pages analysis, nor does she provide the information with which to do the analysis myself, as she has only provided approximately thirty pages of the 182-page deposition transcript. Docket No. 37; Docket No. 37-1, Exh. A. I do not find that Ms. Wachs engaged in sanctionable deposition misconduct knowing only that she lodged at least ten objections, and not knowing whether they were justified in the context of the overall deposition.

## VI. Sanctions Analysis

Ms. Wolstein does not mention on what grounds she asks the Court to impose sanctions, but I have such authority under 28 U.S.C. § 1927, FRCP 30, and the Court's inherent power. The most rigorous of these standards arises under § 1927, which provides that "[a]ny attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

"Courts in the Second Circuit have construed Section 1927 as requiring 'a clear showing of bad faith on the part of the attorney.'" Applebaum, 2011 WL 8771843, at *1 (citing Shafi v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996)); Phillips, 1994 WL 116078, at *3-*4. "A clear showing of bad faith can be established where an attorney's actions are 'so completely without merit as to require the conclusion that they must have been undertaken for some

17

improper purpose such as delay.'" Applebaum, 2011 WL 8771843, at *1 (citing Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)). Courts typically consider three factors in this regard:

> (1) The extent and pervasiveness of the interruptions, as evidenced by the number of times that the attorney appears on the transcript; (2) the character of the interruptions (e.g., whether they included personal attacks on opposing counsel or were merely groundless objections; and (3) the effect of the attorney's conduct (e.g., whether the deposition was entirely destroyed or merely prolonged).

Applebaum, 2011 WL 8771843, at *1 (citing Sicurelli v. Jeneric/Pentron, inc., No. 2 Civ. 4934 (SLT) (KAM), 2005 WL 3591701, at *3 (E.D.N.Y. Dec. 30, 2005)). Here, I find none of these factors met. First, as discussed above, the record does not reflect the extent and pervasiveness of the interruptions such that bad faith can be determined by that measure. Second, although Ms. Wolstein referenced at least two personal attacks made by Mr. Larkin, I find them unfortunate, but I do not find them sanctionable. Mr. Larkin concedes that his behavior during the videotape incident was lacking in some decorum, but insofar as he has acknowledged his error, I do not find that conduct sanctionable, particularly because it does not appear to have occurred while there was a pending deposition question. Docket No. 40 ("We concede that [Ms. Wolstein] is correct . . . that the videos were produced in advance of the deposition . . . . [W]e should have first attempted to resolve the matter with [Ms. Wolstein] in good faith [or] we could have called the court and asked for a ruling."). Finally, the vast majority of Ms. Wolstein's complaint about the continuous objections appears to have been that they are "merely groundless," which the Sicurelli test does not appear to consider indicative of bad faith, and for the reasons I stated above, I do not find them indicative of bad faith, either. As to the third factor of the bad-faith test, Ms. Wolstein argues that Mr. Larkin's and Ms. Wachs's conduct caused the deposition to go

18

an extra one-and-a-half hours. I cannot find there was such improper conduct as to account for one-and-a-half hours of delay or that it is a delay that weighs strongly in favor of sanctions. In sum, consideration of the three factors together does not support finding that Mr. Larkin's and Ms. Wachs's conduct was in bad faith and therefore, Section 1927 sanctions will not enter.

FRCP 30(d)(2) is more permissive than Section 1927. It provides that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). I find the deposition delay, as a result of the videotape conference and the so-called "continuous" objections, is not a sufficiently significant delay to convince me that sanctions are proper here. I also find that the record does not show that Mr. Larkin's and/or Ms. Wachs's conduct impeded or frustrated the fair examination of Defendant Durante. Indeed, Ms. Wolstein only asks that the proceeding be reopened for the purposes of the two pending questions which Mr. Larkin instructed Defendant Durante not to answer, which I have found can be done through affidavit. Accordingly, I find FRCP 30(d)(2) sanctions unnecessary.

For all the same reasons, I decline to impose sanctions under the inherent authority of the Court.

### VII. Conclusion

For the foregoing reasons, I **deny** Plaintiff's motion for sanctions against Mr. Larkin and Ms. Wachs.[6] I **grant** Plaintiff's motion to compel Mr. Larkin and Ms. Wachs to produce by

---

[6] In addition to sanctions, Plaintiff asked the Court to issue an order setting forth various rules for Mr. Larkin and Ms. Wachs to follow with respect to lodging objections when handling other depositions going forward. Docket No. 37. I find this request unnecessary. The FRCP and the Local Rules address myriad situations that might arise during a deposition, a fraction of which I have cited above. Furthermore, the Parties have completed the depositions at issue and the rest of fact discovery. Docket No. 61 at 17 (stating in January 2014 that the Parties were moving

affidavit Defendant Durante's answers to the two questions that Mr. Larkin directed Defendant Durante not to answer during the deposition. Finally, I **deny** Defendants' motion for sanctions against Ms. Wolstein for the reasons discussed above.

Dated:  Brooklyn, New York
          September 19, 2014

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

---

forward with the balance of depositions the following week); Docket No. 3/24/2014 (stating that fact discovery is to end by 4/7/2014); Docket No. 7/14/2014 (setting deadlines for expert discovery, premotion conference letters or joint pretrial order submission). Defendants' cross-motion also requested similar instruction, and for the same reason, I deny that relief.